UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br><br>**REBECCA GOEL GRAY,**<br><br>    Debtor. | Case No. 21-00532-NGH |
| **PATRICK GEILE,**<br><br>    Plaintiff,<br><br>v.<br><br>**ANNE ODILE WICKERSHAM,**<br><br>    Defendant. | Adv. No. 22-06001-NGH |

**MEMORANDUM OF DECISION**

The chapter 7 trustee, Patrick Geile ("Trustee"), commenced this adversary proceeding against Anne Wickersham ("Defendant") seeking to avoid a transfer of real property made by Rebecca Gray ("Debtor") to Defendant in 2018.[1] A trial on the matter was held on March 28, 2023, and April 20, 2023, after which the Court took the issues under advisement. The Court has now considered the testimony and evidence presented,

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 1

the briefs and arguments of the parties, and the applicable law. The following Memorandum constitutes the Court's findings of facts and conclusions of law. *See* Rule 7052.

**BACKGROUND**

Debtor and her ex-husband, Shane York ("York"), owned real property in Payette, Idaho (the "Property"). In 2008, Debtor and York divorced and the divorce decree (the "Decree") addressed their joint debts—particularly the mortgage on the Property. Pursuant to the Decree,

> [t]he mortgage on the residence owned by both parties at 2569 7th Ave. N. Payette, ID will be assumed by a separate 3rd party. Both [York] and [Debtor] will execute a quitclaim deed to the third party who assumes said mortgage. The property of 5 +- acres behind the residence will quitclaim from [Debtor] to a 3rd party to be jointly owned by the 3rd party and Shane York. If [Debtor] has to resort to file bankruptcy on her bill alone, then [York] acknowledges that he shall have no right to object to any bankruptcy filing filed by the [Debtor] as long as any debt with [York's] name on it is not included in the filing.

Ex. 202. Debtor and York contemplated that the third party referenced in the Decree was Ray Wickersham ("Wickersham"), Debtor's father. Wickersham lived nearby and attempted to assume the mortgage after Debtor and York divorced. However, for various reasons, Wickersham was unsuccessful in his attempts to assume the mortgage. Despite the fact that Wickersham never assumed the mortgage, Wickersham began taking care of the Property. Wickersham paid the mortgage payments, maintained and repaired the Property, and rented the Property to third parties. Debtor testified at trial that she had nothing to do with the Property after the divorce—Debtor had not paid the mortgage

MEMORANDUM OF DECISION - 2

since 2008 and had only lived in the Property briefly after the divorce. Debtor and York also unsuccessfully attempted to sell the Property in 2011 and 2012. *See* Ex. 207.

When Debtor's sister, Defendant, moved back to the area, Wickersham proposed Defendant purchase the Property. In April 2017, York agreed to sell the Property to Defendant, stating that he wished "to gift the equity back to you to use as you see fit as I will not be claiming any profits from the transaction." Ex. 107. The purchase and sale agreement between Defendant and York and Debtor was signed June 29, 2017. Ex. 104. In September 2017, Defendant obtained an appraisal for the Property, valuing the Property at $170,000. Ex. 214.

Defendant purchased the Property for $90,000 on February 18, 2018. Exs. 105 & 106. At closing, the proceeds of the sale were used to pay off a deed of trust in the amount of $78,448.02. Ex. 105. Debtor received $2,842.49 from the proceeds.[2] *Id.*

Debtor filed a chapter 7 bankruptcy on August 16, 2021. Case No. 21-00532, Doc. No. 1. On January 26, 2022, Trustee initiated this adversary proceeding seeking to avoid the transfer of the Property pursuant § 544(b) and the Idaho Uniform Voidable Transfer Act (UVTA). During the litigation, Trustee obtained a retrospective appraisal of the Property that valued the Property at $182,000 as of the transfer date. Ex. 110.

---

[2] Closing costs and real property taxes were also deducted from the sale proceeds.

MEMORANDUM OF DECISION - 3

ANALYSIS

    A.    **Avoidance under § 544(b) and the Idaho Uniform Voidable Transfer Act**

Pursuant to § 544(b), "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." Trustee seeks to avoid the transfer of the Property under the Idaho UVTA. In particular, Trustee alleges the transfer was either an actual or constructively fraudulent transfer under I.C. § 55-913 or § 55-914. Under the Idaho UVTA, a trustee may avoid a transfer made within four years of the petition date. I.C. § 55-918.

A prerequisite to both I.C. § 55-913 and § 55-914 is the presence of creditors who had antecedent debts at the time of the transfer. *Parkinson Seed Farm, Inc. v. Arlo Weeks & Brookside, LLC (In re Parkinson Seed Farm, Inc.)*, 640 B.R. 218, 250 (Bankr. D. Idaho 2022). Through Debtor's testimony, Trustee established that Debtor owed a student loans to unsecured creditor Nelnets, and that such debts were incurred prior to 2018. *See also* Ex. 100 at 26–30. As such, Trustee has established the presence of unsecured creditors whose debts were incurred prior to the transfer.

    1.    **Transferable Interest**

Both I.C. § 55-913 and § 55-914 require that there was a transfer of a debtor's interest. "Transfer" is defined under Idaho law as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license and

MEMORANDUM OF DECISION - 4

creation of a lien or other encumbrance." I.C. § 55-910(16). An "asset" is defined as "property of a debtor" but not "property to the extent it is encumbered by a valid lien" or "property to the extent it is generally exempt under nonbankruptcy law." I.C. § 55-910(2).

Because asset is defined as property of the debtor, Debtor must have had an interest in the Property at the time of the transfer. Debtor unquestionably held an ownership interest in the Property at some point, but there is a question as whether she still had that interest at the time of the transfer. Debtor and York purchased the Property in the fall of 2000. Ex. 200. Debtor and York divorced on July 22, 2008. Ex. 202. The Decree contemplated Wickersham would assume the mortgage and Debtor and York would quitclaim their interest in the Property to him. However, Wickersham was never able to get approved to assume or refinance the mortgage on the Property.[3] Despite his inability to assume the mortgage, Wickersham took the responsibility of paying the mortgage, maintaining the Property, and renting the Property to others. As such, Wickersham put a significant amount of time, labor, and money into the Property. Neither Debtor nor York did anything with the Property after Wickersham assumed those responsibilities, and the parties disagree over the legal significance as to the ownership of the Property due to those events.

---

[3] Wickersham was able to successfully take possession of the 5 acres located behind the Property as contemplated in the Decree.

MEMORANDUM OF DECISION - 5

          a.        **Wickersham's Interest**

Defendant argues Wickersham became the owner of the Property by operation of the Decree. Under Idaho law, a state court has the power to divide the community property between spouses upon termination of the marriage. Idaho Code § 32-712. "Divorce decrees are interpreted according to the same rules of construction that apply to contract interpretation. . . . Accordingly, analysis of the terms of a divorce decree always begins with the four corners of the document." *Bromund v. Bromund*, 477 P.3d 979, 986 (Idaho 2020).

Defendant cites to *Hopkins v. Arave (In re Arave)*, 2008 WL 833504 (Bankr. D. Idaho Mar. 27, 2007), to support her position. However, *Arave* is factually distinguishable. In *Arave*, a cabin was awarded to the ex-husband in a divorce proceeding and the divorce decree instructed the ex-wife to execute a quitclaim deed. *Id.* at *1. Without the ex-wife quitclaiming the property, the ex-husband then executed a warranty deed in favor of his parents, transferring the property. *Id.* at *2. Later, when the parents wished to sell the cabin, the ex-husband had the ex-wife execute a quitclaim deed in his favor and then recorded a quitclaim deed in his parent's favor. *Id.* Ultimately, the bankruptcy court concluded the divorce decree was sufficient to transfer the property, and that the ex-husband successfully transferred his interest to his parents when he issued the initial warranty deed, even though the ex-wife had not yet executed a quitclaim deed. *Id.* at 4.

In *Arave*, the divorce decree clearly transferred the interest in the cabin solely to the ex-husband, with all encumbrances and obligations. Here, the Decree specified that a

MEMORANDUM OF DECISION - 6

third party would assume the mortgage, and then Debtor and York would quitclaim the deed to the third party who assumed the mortgage.  Though not specified, the parties testified Wickersham was the third party referenced in the Decree.  However, the transfer of Debtor and York's interest in the Property to Wickersham was conditional upon Wickersham assuming the mortgage.  Because Wickersham was never able to assume the mortgage, that condition did not occur and the Property was not transferred to Wickersham.  Further, Debtor and York never recorded any deed in favor of Wickersham.

While the Court recognizes the parties intended for Wickersham to assume the mortgage and become the owner of the Property, and all parties acted accordingly for nearly a decade, the Court cannot ignore the plain language of the Decree.  Here, the plain language of the Decree specified that Debtor and York would quitclaim the deed to the Property to the third party who assumed the mortgage.  Because Wickersham was unable to assume the mortgage, no transfer occurred.  Accordingly, the Court finds the Decree did not operate to transfer Debtor's interest in the Property to Wickersham.

Defendant also asserts Wickersham became the equitable owner of the Property due to his significant contributions to the Property.  Defendant cites to no case law that supports her position.  Idaho law presumes that the holder of title to property is the legal owner of that property.  *Crawforth v. Bachman (In re Bachman)*, 2007 WL 4355620, at *18 (Bankr. D. Idaho Dec. 10, 2007).  "Thus '[o]ne who would claim the ownership of property of which the legal title stands or [sic] record in another . . . must establish such claim by evidence that is clear, satisfactory, and convincing.'" *Id.* (quoting *Russ Ballard*

MEMORANDUM OF DECISION - 7

*& Fam. Achievement Inst. v. Lava Hot Springs Resort, Inc.*, 548 P.2d 72, 79 (Idaho 1976)).

Courts have found equitable ownership interests under Idaho law through the theory of equitable conversion. S*ee Rush v. Anestos*, 661 P.2d 1229, 1232–33 (Idaho 1983) (noting that under the doctrine of equitable conversion, a purchaser under an installment land contract becomes the equitable owner of real property when the contract becomes binding even though the purchase price has not yet been paid). However, on the facts and record presented, the Court cannot find Wickersham became the equitable owner under such theory. As such, the Court finds Wickersham is not the owner of the Property, either by operation of the Decree or through some sort of equitable interest.

### b. Debtor's Interest

"Under Idaho law, where a divorce decree does not dispose of community property, former spouses own the property as tenants in common," each holding an undivided, one-half interest. *Hopkins v. Idaho State Univ. Credit Union (In re Herter)*, 456 B.R. 455, 468 (Bankr. D. Idaho 2011). Because the Decree did not indicate who would own the Property in the event the third party could not assume the mortgage, it did not completely dispose of the parties' community interest in the Property. Thus, Debtor and York remained co-owners of the Property, each holding a 50% interest.

Trustee asserts York gifted his interest in the Property to Debtor prior to the transfer, leaving Debtor with a 100% interest in the Property at the time of the sale. Trustee's argument is based on York's letter sent April 10, 2017. Ex. 103. The letter is addressed to "Anne Wickersham and concerned parties" and states that York agreed to

MEMORANDUM OF DECISION - 8

sell Defendant the property. Further, York stated that he wished "to gift the equity back to you to use as you see fit as I will not be claiming any profits from the transaction."[4] *Id.*

York's gift was not a transfer of his ownership interest in the Property—it was a gift of equity, effectuated at the time of closing.[5] The letter Trustee relies upon is addressed to Defendant, not Debtor. This gift is reflected in a separate letter dated February 8, 2018, which memorialized York's intent to gift Defendant $3,150 in equity upon the closing of the Property. Ex. 107. Additionally, $3,150 in "gift equity" is listed on the closing disclosure. Ex. 108. Moreover, York testified at trial that he did not give Debtor anything during the sale of the Property. As such, the Court finds the gift of equity to Defendant was clearly not a transfer of York's ownership interest to Debtor and finds York remained an owner of the Property prior to the sale.

Thus, while York executed a letter gifting his equity in the Property, that gift went to Defendant and did not act to transfer the Property to Debtor. As such, Debtor and York were co-owners of the Property at the time of the transfer, and each held a 50% interest.

---

[4] Because Defendant never held an interest in the Property prior to the transfer, the use of the word "back" in the letter creates some confusion as to who York is gifting the equity. However, for the reasons discussed, the Court finds that York intended to gift his equity in the Property to Defendant upon closing.

[5] York is listed as a seller on all the relevant documents and signed the closing documents. The gift equity is listed as a debit on the closing disclosure.

MEMORANDUM OF DECISION - 9

### B. Actual Fraud under I.C. § 55-913(a)

Because the Court finds Debtor had an interest in the Property at the time of the transfer, the Court must consider whether the Trustee can avoid the transfer under either I.C. § 55-913 or § 55-914. Under I.C. § 55-913(a),

> a transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (a) [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor.

Idaho Code § 55-913 enumerates several factors to consider in order to determine if a party acted with actual intent. These factors are:

> (a) The transfer or obligation was to an insider;
> (b) The debtor retained possession or control of the property transferred after the transfer;
> (c) The transfer or obligation was disclosed or concealed;
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (e) The transfer was of substantially all the debtor's assets;
> (f) The debtor absconded;
> (g) The debtor removed or concealed assets;
> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

MEMORANDUM OF DECISION - 10

Here, there are four factors that appear to be relevant. First, Debtor did transfer the Property to an insider—Defendant, who is Debtor's sister.[6] Further, Debtor testified she did not have significant assets at the time of the transfer—as such, the transfer of the Property appears to account for a substantial portion of Debtor's assets. Finally, for reasons discussed below, Debtor did not receive a reasonably equivalent value in return for the transfer.

However, there are mitigating circumstances that weigh against a finding of intent. Debtor did not reside in the Property after the Decree and appears to have had nothing to do with the maintenance of the Property for the several years prior to the transfer. Rather, as discussed earlier, Wickersham paid the mortgage, maintained the property, and handled all tenants during the decade from when the Decree was entered to when the transfer occurred. Further, Debtor, Wickersham, and York all testified that they did not consider the Property to be either Debtor's or York's asset. Indeed, all parties acted as though Wickersham was the owner. As such, though certain badges of fraud are present, when considering the totality of the circumstances, the Court cannot find Debtor acted with actual intent to hinder, delay, or defraud her creditors.

### C. Constructive Fraud under I.C. § 55-914(1)

Under I.C. § 55-914(1),

> [a] transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or

---

[6] "Insider" is defined under I.C. § 55-910(8)(a) to include a relative of the debtor.

MEMORANDUM OF DECISION - 11

obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

As such, there are two main issues to consider when determining whether Debtor's transfer to Defendant was constructively fraudulent—whether Debtor received a reasonable equivalent value for the transfer and whether Debtor was insolvent or became insolvent because of the transfer.

### 1. Reasonable Equivalent Value

A party receives reasonable equivalent value "when it gets roughly the value it gave." *In re All Terrain, LLC*, 625 B.R. 462, 472 (Bankr. D. Idaho 2020). This does not require an "exact equality in value" and the court should consider the totality of the circumstances surrounding the exchange. *Id.* "[R]easonable equivalence is measured as of the time of the transfer" and "is analyzed from the point of view of the debtors' creditors." *Gugino v. Rowley (In re Floyd)*, 540 B.R. 747, 758 (Bankr. D. Idaho 2015).

When considering the value received by the debtor, the Court should consider both direct and indirect benefits. *Id.* "Beyond looking at what is exchanged in a quid pro quo transaction, it is important to examine the value of all benefits inuring to a debtor by virtue of the transaction in question, directly or indirectly." *Jordan v. Kroneberger (In re Jordan)*, 392 B.R. 428, 442 (Bankr. D. Idaho 2008) (quoting *Hopkins v. D.L Evans Bank (In re Fox Bean Co., Inc.)*, 287 B.R. 270, 281 (Bankr. D. Idaho 2002)). This is known as the indirect benefit rule.[7]

---

[7] The indirect benefit rule is generally discussed in connection with § 548, and there does not appear to be any Idaho law which adopts a principle similar to the indirect benefit rule. However, this Court noted in *Parkinson Seed Farm*, 640 B.R. at 250, that the only difference in the analysis under § 548 and I.C. § 55-
(Continued)

MEMORANDUM OF DECISION - 12

In a bankruptcy case from the Northern District of Iowa, the court, in applying the Iowa Fraudulent Transfer Act, noted "if there is equity in encumbered property, the transferee of such property does not give value as to the transferor's creditors by agreeing to pay off the encumbrances." *Sergeant v. G.R.D. Invs., LLC (In re Shaefer)*, 331 B.R. 401, 419 (Bankr. N.D. Iowa 2005).[8] Likewise, in applying the Illinois Uniform Fraudulent Transfer Act, a bankruptcy court in the Northern District of Illinois held that a debtor had not received a reasonable equivalent value where the debtor's mortgage was paid off in exchange for the transfer. *Grochocinkski v. Zeigler (In re Zeigler)*, 320 B.R. 362, 379 (Bankr. N.D. Ill. 2005). In *Zeigler*, the debtors owned a property valued at $185,000 that was encumbered by an $80,000 mortgage debt. *Id.* at 369. The debtors quitclaimed the property to their daughter and her spouse, and the daughter subsequently paid off the mortgage debt in exchange. *Id.* at 370. There, the court held that merely paying off the debtor's $80,000 mortgage was inadequate when the daughter and her spouse received over $100,000 in equity in the property in exchange. *Id.* at 379.

Here, the Property was valued at $182,000 at the time of the transfer.[9] However, the Property was encumbered by a deed of trust in the amount of $78,448.02,[10] leaving

---

913 and § 55-914 is the different look-back period. As such, the indirect benefit rule may be a useful tool in considering what is a reasonable equivalent value under I.C. § 55-913 or § 55-914.

[8] The Uniform Fraudulent Transfer Act was the precursor to the Uniform Voidable Transfer Act, adopted by Idaho. The code provisions applied in *Schaefer* are nearly identical to the Idaho Voidable Transfer Act.

[9] Because the appraisal obtained by Defendant was performed several months prior to the transfer, the Court is using the value provided by the retrospective appraisal as of the transfer date.

[10] As noted previously, under I.C. § 55-910(2), property is not an asset to the extent it is encumbered by a valid lien.

MEMORANDUM OF DECISION - 13

$103,551.98 in equity.  At the time of the transfer, Debtor had a one-half interest in the Property as a co-owner.  Thus, Debtor had an interest in approximately $52,000 of equity in the Property.

Defendant purchased the Property from Debtor and York for $90,000.  As co-owner, Debtor was only entitled to one-half of the proceeds from the sale.  As such, Debtor received a value of approximately $45,000 from the sale of the Property.  However, nearly all of the proceeds from the sale went to pay off the mortgage—Debtor only actually received $2,842.49 from the sale.  Like in *Shaefer* and *Zeigler*, merely paying off the mortgage does not constitute value when Debtor had significant equity in the Property.

However, here, Defendant argues a third party—Wickersham—conferred a benefit to Debtor by paying the mortgage on the Property for approximately a decade and providing maintenance.  Defendant argues that when Debtor transferred the Property to Defendant, Wickersham further conferred a benefit by not seeking any reimbursement for his efforts.  The testimony from Debtor, York, and Wickersham indicates the parties all considered Wickersham's efforts valuable, and his contributions were a factor in the transfer.

Defendant asserts Wickersham paid approximately $80,000 to service the loan over the decade between the Decree and the transfer.  Trustee argues that because the mortgage payments were paid from the rental proceeds of the Property, which Wickersham was not entitled to, the mortgage payments should not be counted as a benefit provided by Wickersham.  The Court agrees with Trustee.  To the extent the

MEMORANDUM OF DECISION - 14

mortgage payments were derived from the rental proceeds of the Property, they cannot be considered a benefit conferred upon Debtor by Wickersham as he had no right to the rental proceeds. Additionally, the Court does not have a sufficient record to determine which, if any, mortgage payments were made out of Wickersham's personal funds, and if so, the value of those contributions. As such, the Court cannot consider the value of the mortgage payments made by Wickersham in determining reasonable equivalence.

Defendant also asserts Wickersham paid $10,000 for maintenance of the Property. No party disputes that Wickersham provided labor and materials to the Property in the amount of $10,000. Debtor likely received some benefit from Wickersham's contributions to the Property, as the Property retained its value, and Debtor did not have to extend her own funds to maintain the Property. However, the Court is skeptical whether Wickersham's services can be considered in calculating the reasonable equivalent value, as there is insufficient evidence to conclude Debtor was ever obligated to reimburse Wickersham. Further, even if the Court were to consider the value added by Wickersham's maintenance and repair of the Property, Debtor still did not receive a reasonable equivalent value for the transfer. Once the deed of trust was paid off, Debtor only received $2,842.49 from the sale proceeds. Including the $10,000 in indirect benefits provided by Wickersham for his years of maintenance on the Property, Debtor still only received only approximately $13,000 in exchange for a transfer of her share of equity in the Property, worth approximately $52,000. As such, the Court does not find that Debtor received a reasonably equivalent value in exchange for her transfer of the Property to Defendant.

MEMORANDUM OF DECISION - 15

### 2. Insolvency

Because Debtor did not receive a reasonably equivalent value for the Property, the Court must next consider whether Debtor was insolvent when she made the transfer, or became insolvent shortly after making the transfer. Under I.C. § 55-911, "[a] debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets."

As for her debts at the time of the transfer, Debtor testified that several of the debts listed on her bankruptcy petition were either incurred after the transfer or were the debts of her late husband. However, Trustee did establish that the student loan debts listed on the Debtor's schedules all belonged to her and had been incurred prior to 2018. Ex. 100 at 7–11. The student loan debts listed on Debtor's Schedule E/F totaled $45,114. *Id.*

Further, it does not appear that Debtor had many assets at the time of the transfer, or shortly after. At the trial on the matter, Debtor testified that she believed her income at the time of the transfer and shortly after was approximately $10,000.[11] Debtor also testified she did not have a large sum in any bank account or any valuable assets at the time of the transfer.

Considering Debtor's testimony regarding her assets at the time of transfer, Trustee has established by a preponderance of the evidence that Debtor's debts at the time of the transfer—at least $45,114—were greater than the value of her assets after the

---

[11] Specifically, Debtor testified that her income for 2021 was $9,520 and that her income would have been about the same in 2017 and 2018.

MEMORANDUM OF DECISION - 16

transfer. Accordingly, Trustee has established that Debtor was insolvent either at the time of the transfer or shortly after the transfer.

### D. Remedy

Because Trustee has established by a preponderance of the evidence that Debtor did not receive a reasonably equivalent value for the Property and she was insolvent after the transfer as defined by I.C. § 55-911, Trustee can avoid the transfer of the Property under § 544(b) as a constructively fraudulent transfer pursuant to I.C. § 55-914(1). "[A]fter demonstrating the right to recover conveyances under section 544(b), a trustee must then establish the amount of recovery under section 550(a) of the Bankruptcy Code." *In re Acequia, Inc.*, 34 F.3d 800, 809 (9th Cir. 1994).

Under § 550, "to the extent that a transfer is avoided under section 544 . . . , the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of the such property, from—(1) the initial transferee of such transfer." Here, the Court finds that a money judgment is appropriate and consistent with Trustee's prayer for relief in the Complaint.

Because Trustee was only permitted to avoid a "transfer," and "transfer," as defined by the Idaho UVTA, is a disposition of an asset" which excludes property encumbered by a valid lien, Trustee is only entitled to avoid the transfer to the extent Debtor disposed of unencumbered, non-exempt property. Accordingly, Trustee's recovery under § 550(a)(1) is limited to Debtor's equity interest in the Property. *See Joseph v. Madray (In re Brun)*, 360 B.R. 669, 674 (Bankr. C.D. Cal. 2007) (applying

MEMORANDUM OF DECISION - 17

California's fraudulent conveyance law in determining the extent that the plaintiff could recover under § 550(a)).

However, Defendant is also entitled to a reduction in the judgment for the value given to Debtor for the transfer. The Ninth Circuit has held that state law good faith transferee exceptions apply in cases asserting avoidance under § 544. *Decker v. Tramiel (In re JTS Corp.)*, 617 F.3d 1102, 1116 (9th Cir. 2010). Under I.C. § 55-917(4), "a good-faith transferee or obligee is entitled, to the extent of the value given the debtor for the transfer or obligation, to: . . . (c) a reduction in the amount of the liability on the judgment." Here, the Court finds Defendant was a good-faith transferee. The evidence shows Defendant entered the transaction in good faith. As discussed previously, there was no actual fraud involved in this transaction. Debtor had nothing to do with the Property for several years and endeavored to dispose of the Property through attempts to sell the Property and Wickersham's efforts to assume the mortgage. Though Defendant is Debtor's sister, this transaction was proposed in good faith, based on opportunity and convenience, and not as an attempt to keep an asset in the family and away from Debtor's creditors. Accordingly, under these circumstances, the Court finds Defendant acted in good faith. As such, Defendant is entitled to a reduction in the money judgment pursuant to I.C. § 55-917(4) as the value Defendant provided Debtor for Debtor's equity in the Property.

At the time of the transfer, the Property was valued at $182,000, but encumbered by a deed of trust in the amount of $78,448.02, leaving $103,551.98 in equity. Because Debtor had a one-half interest in the Property, her equity interest was $51,775.99. As

MEMORANDUM OF DECISION - 18

noted previously, Defendant purchased the Property for $90,000, with the bulk of the sale proceeds going towards paying off the deed of trust. However, Debtor also received $2,842.49 from the sale. As such, while Trustee may recover the value of Debtor's equity at the time of the transfer—$51,775.99—Defendant is entitled to a reduction in the money judgment in the amount of $2,842.49. Accordingly, Trustee is entitled to a money judgment in the amount of $48,933.50.

**CONCLUSION**

In conclusion, Trustee can avoid Debtor's transfer of her interest in the Property to Defendant under § 544(b) as a constructively fraudulent transfer under I.C. § 55-914(1). Trustee will be awarded a money judgment in the amount of $48,933.50. Trustee shall submit a judgment consistent with this Decision.

DATED: June 23, 2023



_____
NOAH G. HILLEN
U.S. Bankruptcy Judge

MEMORANDUM OF DECISION - 19